**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

BRENT DECK,

      Plaintiff-Appellant,

v.

ENGINEERED LAMINATES;
KEITH ILLIG; ELKIN McCALLUM;
KHI, INC.; EXCEL LAMINATES,
INC.; JOAN FABRICS, INC.;
JOAN AUTOMOTIVE INDUSTRIES,
INC.; JOAN LAMINATES, INC.,

      Defendants-Appellees.

No. 02-3100

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 99-CV-2549-CM)**

---

Submitted on the briefs: [*]

Brent Deck, Pro Se.

Bill Hays, Jason E. Pepe, and Chelsi Hayden, of Shook, Hardy & Bacon, L.L.P.,
Overland Park, Kansas, and Lawrence L. Ferree, III, of Ferree, Bunn, O'Brady &
Rundberg, Overland Park, Kansas, for Defendants-Appellees.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Before **HARTZ** , Circuit Judge, **BARRETT** and **BRORBY** , Senior Circuit
Judges.

**HARTZ** , Circuit Judge.

Plaintiff Brent Deck, proceeding pro se, appeals the district court's entry of judgment on the pleadings on his civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68. We must reverse.

RICO provides certain advantages to plaintiffs, but it also presents substantial hurdles for plaintiffs to overcome to establish a proper claim. Of specific concern on this appeal, RICO requires the plaintiff to prove that the defendants committed at least two predicate acts (violations of criminal statutes listed in RICO, § 1961(1)) and that the plaintiff has suffered injury to his business or property as a result of those predicate acts. Defendants have challenged whether some of the acts alleged by Plaintiff are proper RICO predicate acts and whether Plaintiff has alleged cognizable injury to his business or property.

We agree in part with Defendants. We hold that witness tampering in a state-court proceeding is not a RICO predicate act. We also hold that although extortion is a proper predicate act, a claim of extortion cannot be based on mere abusive litigation. On the other hand, mail fraud and wire fraud are proper predicate acts (a proposition not challenged by Defendants), and we hold that

-2-

Plaintiff has adequately alleged that fraud injured his business or property. In particular, Plaintiff had a property interest in a cause of action allegedly prejudiced by the fraud; and restrictions on his competing with Defendants (which allegedly were imposed by a fraudulently induced agreement) would constitute an injury to his business. Finally, we reject Defendants' contention that Plaintiff's RICO claim must be dismissed as unripe.

## BACKGROUND

Because the district court entered judgment on the pleadings under Fed. R. Civ. P. 12(c), we "accept[] all well-pleaded allegations in the complaint as true, and constru[e] them in the light most favorable to the plaintiff." *Estes v. Wyo. Dep't of Transp* ., 302 F.3d 1200, 1203 (10th Cir. 2002). The complaint at issue is Plaintiff's Revised Third Amended Complaint.

Plaintiff is a former employee of Defendant Engineered Laminates (EL). EL was a general partnership between Joan Laminates, Inc., whose president is Elkin McCallum, and KHI, Inc., whose president is Keith Illig. Excel Laminates, Inc., Joan Fabrics, Inc., and Joan Automotive Industries, Inc., are successors, agents, or transferees of EL. Illig is the president of Excel Laminates, Inc., and McCallum is president of the other two companies.

After Plaintiff's employment with EL ended, Plaintiff began to compete with EL. EL sued Plaintiff in Kansas state court on the ground that he was using

-3-

its proprietary trade secrets. Plaintiff counterclaimed, alleging abuse of process, fraud, and breach of contract. On December 2, 1994, the parties reached a settlement agreement, which was executed by Illig, with McCallum's authorization. Under the agreement Plaintiff released EL from his countersuit in return for payment to Plaintiff of $35,000 in five installments during the following four years. Plaintiff's complaint, although far from clear on the point, also appears to allege that the agreement restricted his ability to compete with EL. In light of our duty to construe pro se pleadings liberally, *see Hunt v. Uphoff*, 199 F.3d 1220, 1223 (10th Cir. 1999), we will assume that Plaintiff has made such an allegation.

Beginning in October 1994, EL "transferred assets, employees, associates, representatives, and business from [EL] to Excel Laminates" and other entities owned and controlled by Illig and McCallum, R., Vol. 1, Doc. 26, at 7-8, ¶¶ 19, 22, although EL "remained in existence until September of 1998, when it had a cash value of about $70,000." *Id.* at 15, ¶ 52. EL defaulted on the settlement agreement in December 1997, failing to make the final two payments amounting to $15,000.

Plaintiff brought suit in federal court, alleging RICO violations (a substantive violation and a conspiracy) by Defendants and state-law claims of breach of contract, fraud, unjust enrichment, and outrageous conduct. Federal

jurisdiction over the lawsuit hinges on the adequacy of the RICO allegations. The RICO allegations center on the state-court action, which Plaintiff contends was filed without a sound basis in fact or law. He claims that Defendants gave or suborned perjured testimony during discovery, prolonged the litigation, and then settled the case with the intention of liquidating EL without its paying Plaintiff the agreed-upon amount. He further claims that he settled in reliance on fraudulent representations by Defendants and that he performed all his duties under the settlement agreement.

Defendants moved for judgment on the pleadings. The district court dismissed the RICO claims with prejudice and then declined to exercise supplemental subject-matter jurisdiction over Plaintiff's state causes of action, dismissing them without prejudice. Upon Plaintiff's motion for reconsideration, the court modified its order slightly, but did not change the result. This appeal followed.

## DISCUSSION

We review de novo a ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). As with a ruling under Fed. R. Civ. P. 12(b)(6), we uphold a dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Mock v.*

-5-

*T.G. & Y. Stores Co.*, 971 F.2d 522, 529 (10th Cir. 1992) (internal quotation marks omitted).

RICO allows private parties to bring civil suits for treble damages. 18 U.S.C. § 1964(c). To state a RICO claim, a plaintiff must allege that the defendant violated the substantive RICO statute, 18 U.S.C. § 1962, by setting forth "four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering activity must include commission of at least two predicate acts. *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). Also, a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962. *Robbins*, 300 F.3d at 1210.

The district court dismissed Plaintiff's RICO claims for lack of standing on the ground that he had failed to allege the requisite injury. To determine whether Plaintiff properly alleged an injury to his business or property, we first examine the alleged predicate acts that purportedly caused the injury. *See Sedima*, 473 U.S. at 497 ("[T]he compensable injury necessarily is the harm caused by predicate acts . . . ."). Plaintiff alleges as predicate acts that Defendants committed mail and wire fraud by using the United States mail and facsimile-

machine transmissions to submit settlement offers and exchange a fraudulent settlement agreement, in violation of 18 U.S.C. §§ 1341, 1343. He also alleges witness tampering in connection with the state case, in violation of 18 U.S.C. § 1512; extortion through threats of prolonged, baseless litigation, in violation of 18 U.S.C. §§ 1951, 1961(1)(A); and wire fraud predicated on a defendant's false statement that EL no longer existed.

We must, however, disregard two of the alleged predicate acts. First, witness tampering is actionable under 18 U.S.C. § 1512 only if it takes place "in an official proceeding," which is defined in § 1515(a)(1) to include only federal proceedings. Accordingly, tampering with a witness in a state judicial proceeding, the offense that Plaintiff alleged, is not a RICO predicate act.

As for extortion, Plaintiff alleges no more than abusive litigation. His complaint states the following:

### Interference with Commerce or Extortion
### (18 USC 1951) (18 USC 1961 (1) (A))

54. In a final meeting with [Plaintiff] after November 30, 1992, Illig threatened that, regardless of merit, Illig could "tie you up in court" if [Plaintiff] exercised his right to compete against EL rather than agree to Defendant's new contractual terms.

55. About April, 1993, Illig, acting through EL, brought a suit against [Plaintiff], which Illig maintained through the use of fraudulent pleadings or false testimony regarding material facts, until two years after [Plaintiff] had severed relations with Defendant.

56. Pleadings and testimony included known and deliberate false or misleading allegations that [Plaintiff] had entered into an oral covenant not to compete, that EL had a secret new machine design which it sought to protect, and that EL had taken customary steps to protect its alleged secrets.

57. Illig used force, or fear of economic harm, or color of official right, to seek or obtain [Plaintiff]'s non-competition, or services, or contractual agreement, or property.

R., Vol. 1, Doc. 26 at 15-16.

Although the alleged conduct is certainly reprehensible, it does not in itself constitute extortion under § 1951. Section 1951(b)(2) defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." We recognize that litigation can induce fear in a defendant; and it would be fair, at least in other contexts, to characterize as "wrongful" the filing of a groundless lawsuit, particularly when the plaintiff resorts to fraudulent evidence. But we join a multitude of other courts in holding that meritless litigation is not extortion under § 1951. *See, e.g., United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("threat to file litigation against Marion County, even if made in bad faith and supported by false affidavits, was not 'wrongful'" within the meaning of term in § 1951); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994); *First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984); *Dias v.*

*Bogins* , No. 97-1612, 1998 WL 13089, at **1 (1st Cir. Jan. 13, 1998)

(unpublished); *G-I Holdings, Inc. v. Baron & Budd* , 179 F. Supp. 2d 233, 259

(S.D.N.Y. 2001); *Grauberger v. St. Francis Hosp* ., 169 F. Supp. 2d 1172, 1178

(N.D. Cal. 2001); *von Bulow by Auersperg v. von Bulow* , 657 F. Supp. 1134,

1143-45 (S.D.N.Y. 1987). *But cf. Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick* , 726

F. Supp. 1083, 1093-97 (E.D. Mich. 1989) (lawsuit was component of the

extortion).

Extortion is the antithesis of litigation as a means of resolving disputes. To

promote social stability, we encourage resort to the courts rather than resort to

force and violence. Yet recognizing abusive litigation as a form of extortion

would subject almost any unsuccessful lawsuit to a colorable extortion (and often

a RICO) claim. Whenever an adverse verdict results from failure of the factfinder

to believe some evidence presented by the plaintiff, the adverse party could

contend that the plaintiff engaged in extortionate litigation. Comfortable that the

adjective "wrongful" in the extortion statute was not intended to apply to

litigation, we hold that Plaintiff's allegations of bad-faith litigation do not state

the predicate act of extortion.

That leaves the mail and wire fraud allegations as the only potential RICO

predicate acts pleaded by Plaintiff. The complaint describes the fraud (both mail

and wire) relating to the settlement agreement as follows: Defendant Illig "made

false and material representations in the form of one or more proposed settlement agreements . . . promising payment over a four year period in order to induce Plaintiff into accepting the settlement agreement." R., Vol. 1, Doc. 26, at 6, ¶ 16a. Before executing the settlement agreement, Illig and Defendant McCallum had "agreed to a plan wherein they would be able to liquidate [EL] without paying its obligation to [Plaintiff]," *id.* at 7, ¶ 17d, and took steps to transfer assets, employees, and business from EL to Excel Laminates, *id.* at 7, ¶ 19. Thus, Illig and McCallum knew that EL would be unable to make payments over the four years promised in the proposed settlement agreement. *Id.* at 7, ¶ 20. They concealed this information from Plaintiff, *id.* at 8, ¶ 28, intending that he "rely upon [their] misrepresentations," *id.* at 8, ¶ 23. As a result, Plaintiff was "fraudulently induc[ed] . . . to dismiss valid claims," *id.* at 9, ¶ 32b, and was damaged in an amount in excess of $50,000, *id.* at 8-9, ¶ 31.

The gist of the alleged fraud appears to be Defendants' failure to inform Plaintiff at the time of the settlement that they planned to transfer the business assets of EL to other entities they controlled, so that EL itself could not make some of the future payments called for by the settlement agreement. This is an adequate allegation of fraud. A promise to pay contains an implied representation that the promisor intends to honor the promise. Thus, one can sue for fraud when

-10-

the promisor made the promise with no intent to honor it.	*See Roberts v. Wells Fargo AG Credit Corp* ., 990 F.2d 1169, 1172 (10th Cir. 1993).

An additional wire fraud allegation is more straightforward.  The complaint states that in a December 11, 1997, telephone conversation Defendant Illig falsely stated that EL no longer existed, thereby leading Plaintiff not to sue for breach of contract while EL still had assets.

The mail fraud and wire fraud allegations in Plaintiff's complaint are proper predicate acts.  There may be a serious question whether the alleged predicate acts could support the required finding of a	*pattern*  of racketeering activity; but Defendants have not raised that issue on appeal.  We therefore turn to their argument that Plaintiff failed to allege an injury to his business or property.

Defendants argue extensively that Plaintiff's litigation costs in the original proceeding brought in state court by EL do not constitute injuries to Plaintiff's business or property.  But we need not reach that issue, because the alleged causes of those litigation costs—Defendants' alleged extortion and witness tampering—are not, as explained above, RICO predicate acts.  The alleged mail fraud and wire fraud did not cause Plaintiff to incur litigation costs, so those costs are not recoverable in Plaintiff's RICO action.

With respect to the injuries allegedly caused by the mail and wire fraud, however, we disagree with Defendants and hold that the injuries can properly be characterized as injuries to business and property. The mail fraud allegedly caused Plaintiff to enter into a settlement to which he would not otherwise have agreed. As a result of the settlement, he relinquished claims he had against EL and agreed not to compete with EL in certain ways.

In our view, both these alleged consequences of the settlement were injuries to Plaintiff's business or property. The Supreme Court has held that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). We agree with the Third Circuit that "[a] cause of action, of course, is a form of 'property,' and when it arises out of the termination of a business, we think it is not unfair to characterize conduct tending to impair it as 'business injury.'" *Malley-Duff & Assocs, Inc.. v. Crown Life Ins. Co.*, 792 F.2d 341, 354 (3d Cir. 1986). Likewise, fraud, as alleged in this case, that causes one to relinquish a cause of action arising out of his business is an injury to "business or property."

Plaintiff also claims a second cognizable injury resulting from the alleged fraud. If, as he asserts, the fraudulently induced settlement agreement required him to limit the extent to which he could compete with EL, then the fraud injured his "business," within the meaning of the term in RICO.

Although Defendants argue that Plaintiff has not adequately alleged that his injuries were proximately caused by Defendants' predicate acts, their argument does not appear to address the injuries to Plaintiff's cause of action against EL and the injury to his opportunity to compete with EL. In any event, the allegations are adequate with respect to causation of these injuries.

Turning to Plaintiff's additional wire fraud allegation, he alleges that the false statement that EL no longer existed caused him to forego suing for breach of the settlement agreement until EL's assets had been dissipated. This allegation adequately states a RICO claim of injury to Plaintiff's property—his contractual right to receive payments from EL.

Defendants respond, however, that this claim is not yet ripe and should be dismissed because Plaintiff "does not have a judgment regarding his breach of contract claim, much less any evidence that the judgment went unsatisfied." Aplee. Br. at 15. Defendants' argument might be correct if Plaintiff's only alleged injury were prejudice to his ability to collect damages for breach of contract. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-37 (2d Cir. 2003); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990). But Plaintiff also alleges injury from being fraudulently induced to enter into the settlement agreement—a settlement that required him to limit his competition with EL and to dismiss his counterclaim against EL. Damages from that injury are not dependent

-13-

on the Plaintiff's being unable to recover fully on his contract claim. Thus, Plaintiff's RICO claim is ripe, even though some alleged damages may be too speculative to recover before the contract claim is resolved.

## CONCLUSION

We hold that we cannot affirm (on the grounds raised on appeal) the district court's dismissal of Plaintiff's complaint. We REVERSE the judgment below and REMAND for further proceedings consistent with this opinion.