

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-2007

# Magnum v. Archdiocese Phila

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5117

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Magnum v. Archdiocese Phila" (2007). *2007 Decisions.* Paper 258.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/258

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5117
_____

THOMAS MAGNUM; WILLIE MAGNUM;
JAMES MONEY; DAVID PORTER;
WALTER J. DALY; MARY LOGAN;
ALFRED ROBERTS; NICHOLAS SIRAVO;
BILL HENIS; JOAN MCCRANE;
JOHN QUINN; JAMES SPOERL;
JOHN DOE; JANE DOE,

*Appellants*,

v.

ARCHDIOCESE OF PHILADELPHIA;
JUSTIN RIGALI, His Eminence Cardinal;
ANTHONY BEVILACQUA, His Eminence Cardinal;
JOHN KROL, Estate of His Eminence Cardinal,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-2589)
District Judge: Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2007

Before: SLOVITER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: November 6, 2007)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

In this civil RICO action, fourteen individuals sued the Archdiocese of
Philadelphia and three of its Cardinals (collectively, the Archdiocese). The District Court
dismissed the complaint, finding that Plaintiffs lacked RICO standing and failed to state a
claim for civil conspiracy. We will affirm.

**I.**

Appellants claimed childhood sexual abuse by certain Diocesan priests from 1956
to 1985. The gravamen of their complaint is that the Archdiocese engaged in a pattern of
concealing child abuse by clergy in violation of the Racketeer Influenced and Corrupt
Organizations Act (RICO), 18 U.S.C. § 1962 *et seq.*, and 42 U.S.C. §§ 1985 and 1986.
The District Court properly exercised subject matter jurisdiction pursuant to 18 U.S.C.
§ 1962 *et seq.* and 42 U.S.C. §§ 1985 and 1986. We have jurisdiction pursuant to 28
U.S.C. § 1291.

**II.**

Our review of a district court's dismissal for failure to state a claim upon which
relief may be granted under Rule 12(b)(6) is plenary, and we apply the same test as the
district court. *See Maio v. Aetna, Inc.,* 221 F.3d 472, 481 (3d Cir. 2000). Accordingly,
"[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all

2

well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Id.* at 481-82. In other words, a complaint only may be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Lum v. Bank of Am.,* 361 F.3d 217, 223 (3d Cir. 2004).

We accept as true all factual allegations in the complaint, but we "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 184 (3d Cir. 2000). We also exercise plenary review over the District Court's determination that Appellants lacked standing to pursue their claims under 18 U.S.C. § 1964(c). *See Maio,* 221 F.3d at 482.

### III.

*A.     The District Court Properly Dismissed Appellants' Civil RICO Claims*

The District Court dismissed Appellants' civil RICO claims, holding that they: (1) lacked standing to sue because their alleged damages stemmed from personal injury claims, which are not cognizable under RICO; (2) could not plead proximate cause; and (3) could not plead a RICO "enterprise" or "pattern of racketeering activity." Because we find that the District Court correctly held that Appellants lacked RICO standing, we do not address its additional holdings.

The federal civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any

3

appropriate United States district court." 18 U.S.C. § 1964(c).[1] The adequacy of a

plaintiff's claim of "injury to business or property" implicates his standing to sue under

civil RICO. *See Maio*, 221 F.3d at 482. Thus, these questions properly are resolved by

way of a Rule 12(b)(6) motion. *Id.* at 482 n.7; *see also Anderson v. Ayling*, 396 F.3d 265,

269 (3d Cir. 2005).

> 1. *The Lost Opportunity To Bring A State Law Personal Injury Claim Is Not "Business or Property" Within The Meaning Of § 1964(c), And Cannot Support A Civil RICO Claim Under § 1962(c).*

Appellants allege only one type of injury to their "business or property": they

claim that the Archdiocese concealed the truth about sexual predators in its midst for so

long that by the time Appellants learned of the Archdiocese's culpability, it was too late

to pursue state law tort remedies. The District Court characterized this claim as "a

somewhat novel pleading of injury," and we agree.

---

[1] Section 1962 states, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d). The term "racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a list of crimes punishable under state law by a term of imprisonment in excess of one year, as well as certain federal crimes.

Although RICO is to be read broadly, *see Tabas v. Tabas,* 47 F.3d 1280, 1291 (3d Cir. 1995), Congress's limitation of recovery to "business or property" injury "retains restrictive significance." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). This restrictiveness "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio,* 221 F.3d at 483. We have stated that "a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Id.* (citation and internal quotation marks omitted).

In light of the foregoing, it is clear that Appellants' allegation of a lost opportunity to bring state law personal injury claims against the Archdiocese is not cognizable as an injury to "business or property" in a civil RICO action. Because Appellants do not allege that the Archdiocese's conduct injured them in their "business" pursuits, their claim is viable only if their lost opportunity to bring state law personal injury claims is "property." We have held that "physical or emotional harm to a *person*" is not "property" under civil RICO. *See Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918 (3d Cir. 1991) (emphasis in original). Similarly, losses which "flow" from personal injuries are not "property" under RICO. *See Evans v. City of Chicago,* 434 F.3d 916, 930-31 (7th Cir. 2006) (lost earnings on account of personal injury insufficient to satisfy § 1964(c)'s injury to "business or property" requirement).

Distinguishing our decision in *Malley-Duff & Assoc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir. 1986), the District Court noted that it "involved causes of action

5

affecting business interests grounded in contract, not tort." *See Magnum v. Archdiocese of Phila.*, No. 06-CV-2589, 2006 WL 3359642 at *6 (E.D. Pa. Nov. 17, 2006). We agree that this distinction is meaningful. In *Malley-Duff*, an insurance agent claimed that its principal committed various unfair practices to steal the agent's territory, defraud it of commissions, and drive it out of business. *See Malley-Duff*, 792 F.2d at 343. After losing a lawsuit against the company, the agent brought a civil RICO suit, alleging injury to his "business or property" because the company interfered with the prior suit by subornation of perjury, blackmail, witness intimidation, and other forms of obstruction of justice. *See id.* at 344 and n.4. The district court concluded that this was not an injury to "business or property" actionable under civil RICO and dismissed the claim, *see id.* at 353, but we disagreed, explaining:

> If RICO's reference to injury to "business or property" is to be given meaning, RICO standing cannot be limited to "business" injuries only. We would certainly think, for example, that an individual harmed in his personal property by loansharking activities should have a civil remedy under RICO. A cause of action is, of course, a form of "property," and *when it arises out of the termination of a business*, we think it is not unfair to characterize conduct tending to impair it as "business injury."

*Id.* at 354 (emphasis added). Thus, we held that Malley-Duff's allegations that its adversary's obstructions of justice caused "great expenses, delays, and inconvenience" in the prosecution of the first lawsuit sufficiently pleaded injury to business or property under the RICO statute. *Id.* at 355.

The Tenth Circuit recently followed *Malley-Duff* on similar facts. *See Deck v. Engineered Laminates,* 349 F.3d 1253 (10th Cir. 2003). There, Engineered Laminates

sued Deck after he began to compete with his former boss. *Deck*, 349 F.3d at 1256. The case settled after the company agreed to pay Deck a sum of money in exchange for Deck's promise not to compete. *Id.* Soon after settling the case, however, the company transferred assets to related companies and defaulted on its settlement obligations. *Id.* Deck then brought a civil RICO action, claiming that Engineered Laminates agreed to the settlement knowing that it intended to default on its obligations after rendering the company insolvent. *Id.* at 1258. The district court rejected this claim on the ground that it did not state a civil RICO injury to "business or property," but the Tenth Circuit reversed, explaining: "[f]raud, as alleged in this case, *that causes one to relinquish a cause of action arising out of his business* is an injury to 'business or property'" under the RICO statute. *Id.* at 1259 (emphasis added) (quoting *Malley-Duff*).

As the emphasized portions of *Malley-Duff* and *Deck* reflect, although a cause of action indeed may be a form of property, injuries to that property will only be redressable under civil RICO if the plaintiff can allege that the wrong to be vindicated is itself an injury to "business or property" within the meaning of RICO. This distinction separates *Malley-Duff* and *Deck* from the case at bar, because the wrong underlying Appellants' lost opportunity to sue — personal injury from childhood sexual abuse — does not implicate injury to "business or property" under § 1964(c), as we have explained above. *See Genty,* 937 F.2d at 918; *see also Evans*, 434 F.3d at 930-31.

Pennsylvania law supports this conclusion. Although federal law governs most issues under RICO, we look to state law to determine whether a particular interest is

7

"property" within the meaning of § 1964(c). *See Logan v. Zimmerman Brush Co.,* 455

U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); *see also Board of Regents v.*

*Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Unliquidated personal

injury claims are not considered "property" in Pennsylvania. *See Chiropractic*

*Nutritional Assoc., Inc. v. Empire Blue Cross & Blue Shield,* 669 A.2d 975, 983 (Pa.

Super. 1995); *see also DeMasi v. DeMasi,* 366 Pa. Super. 19, 46, 530 A.2d 871 (1987).

"As a general rule, a personal injury tort claim remains unliquidated until it is reduced to

a definite amount by a verdict or a settlement." *Prevish v. Northwest Medical Center Oil*

*City Campus,* 692 A.2d 192, 199 (Pa. Super. 1997) (citation omitted). Because

Appellants' unliquidated tort claims are not recognized as "property" in Pennsylvania,

neither is the lost opportunity to bring such claims.

Appellants argue that the District Court gave short shrift to *Hurley v. Hurley*, 342

Pa. Super. 156, 492 A. 2d 439 (1985), which made the general observation that "[m]odern

decisions suggest that the term 'property' refers generally to rights of action arising out of

tort as well as contract, whether such right of action is for injury to the person or to

property." *See Hurley*, 492 A.2d at 441 (citation and internal quotation marks omitted).

But the Superior Court in *Hurley* also stated:

> Decisions in Pennsylvania, however, have held that there are significant
> property differences which distinguish unliquidated personal injury claims
> from claims based on contract. 'A right of action strictly personal is not
> assignable and the general doctrine is, both in law and equity, that a right of
> action for a pure tort is not the subject of assignment . . . . Such a right does
> not seem to us to be a property right, capable of assignment, prior to

8

liquidation . . . .' *Sensenig v. Pennsylvania R.R. Co.,* 229 Pa. 168, 172, 78 A. 91, 91-92 (1910).

*Id. Hurley* then held that a spouse's unliquidated tort claim for personal injuries was not marital property in Pennsylvania. *Id.* at 442. Thus, *Hurley*'s discussion of the "significant property differences" between tort and contract claims actually reinforces the distinction the District Court made here between contract and tort rights.

Even if Pennsylvania law recognized some property right in unliquidated personal injury tort claims, it is unclear whether such a right would apply in the civil RICO context. *See Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (noting that "we are not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO.") (citing *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 66 S. Ct. 992, 90 L. Ed. 1172 (1946)). Congress did not intend to recognize a cause of action in civil RICO where the damages from the injuries alleged are "speculative." *See Maio*, 221 F.3d at 495; *see also Doug Grant,* 232 F.3d at 188 (expressing doubt that "lost speculative opportunity" would be an injury to business or property under the civil RICO statute). Here, Appellants' claims are unassignable and cannot be valued yet, so their claims are too speculative to confer RICO standing. *See In re Taxable Mun. Bond Securities Litig.,* 51 F.3d 518, 522-23 (5th Cir. 1995) (lost opportunity to obtain low interest loan too speculative to support RICO standing); *see also Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847-48 (1st Cir. 1990) (unliquidated, inchoate damages too speculative to support civil RICO claim).

9

In sum, we conclude that any damages Appellants may have sustained from the lost opportunity to bring personal injury tort claims against the Archdiocese do not constitute "injury to business or property" within the meaning of 28 U.S.C. § 1964(c). Accordingly, the District Court did not err when it held that Appellants lacked standing under § 1962(c).

> 2.      *Appellants' Inability To Plead A Violation Of § 1962(c) Required Dismissal Of Their Conspiracy Claim Under § 1962(d).*

The District Court also dismissed Appellants' RICO conspiracy claim, explaining that their inability to state a claim under § 1962(c) doomed their claim under § 1962(d). We find no error in this regard because "[a]ny claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993); *see also Lum,* 361 F.3d at 227 n.5.  A plaintiff alleging a civil RICO violation under *either* § 1962(c) or (d) must plead a cognizable injury to "business or property" under § 1964(c).  *See* 18 U.S.C. § 1964(c) (connecting the civil remedy for all claims brought under § 1962 to the showing of an injury to business or property). Thus, a plaintiff's inability to allege injury to business or property for purposes of § 1962(c) necessarily forecloses any claim brought under § 1962(d).  *See Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 290 (3d Cir. 1996).

Although Appellants acknowledge that their RICO conspiracy claim rises under § 1962(d) and falls with their § 1962(c) claim, they insist that they stated a claim under

10

§ 1962(c). As we have explained, Appellants' § 1962(c) claim fails because they did not plead injury to their business or property within the meaning of § 1964(c).

B.    *The District Court Properly Dismissed Appellants' Civil Rights Claims*.

Appellants also brought obstruction of justice and conspiracy claims under 42 U.S.C. §§ 1985 and 1986, which the District Court dismissed for failure to state a claim. For the reasons that follow, we conclude that the District Court did not err in rejecting these claims.

1.    *Appellants Did Not State A Claim Under 42 U.S.C. § 1985*.

Section 1985(2) provides a remedy when:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). Appellants also alleged a violation of Section 1985(3), which provides a remedy when:

> two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws[.]

42 U.S.C. § 1985(3).

11

To state a claim under §§ 1985(2) or (3), a plaintiff must allege four things: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *see also Brawer v. Horowitz*, 535 F.2d 830, 839 (3d Cir. 1976). In light of these pleading requirements, Appellants' complaint fails to state a claim for two independent reasons.

First, the District Court held that Appellants' status as minors during the relevant time period was insufficient to state a claim under § 1985. The Supreme Court has stated "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a claim under § 1985. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268-269, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993).[2] As the Archdiocese points out, Appellants have cited no authority — nor have we found any — for the proposition that "minor children" constitute a protected class for purposes of the Equal Protection Clause. Instead, insofar as we have recognized

_____

[2] We reject Appellants' contention that they are not required to show class-based animus to show that the Archdiocese conspired in violation of the so-called "hindrance clause" of § 1985(3). The only support for this contention is Justice Souter's concurring opinion in *Bray*. Although Justice Souter did indeed so speculate in his concurring opinion, a majority of the Court flatly rejected that hypothesis. *See Bray*, 506 U.S. at 281 ("Judging from the statutory text, a cause of action under the 'hindrance' clause would seem to require the same class-based, invidiously discriminatory animus that the 'deprivation' clause requires . . . .") (internal quotation marks omitted).

12

that § 1985 protects "victims of historically pervasive discrimination" and those with "immutable characteristics," *see Carchman v. Korman Corp.,* 594 F.2d 354, 356 (3d Cir.), *cert. denied,* 444 U.S. 898, 100 S. Ct. 205, 62 L. Ed. 2d 133 (1979); *Lake v. Arnold* 112 F.3d 682, 687 (3d Cir. 1997), we hold that minor children — who have not been recognized as "victims of historically pervasive discrimination" and whose sole classifying characteristic (*i.e.*, their minority) is not immutable — fall outside the ambit of the statute.

Second, Appellants have not pleaded a violation of any right protected against private encroachment by § 1985. "[I]n the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (citations omitted). The deprivations Appellants allege, *viz.*, their "substantive due process rights to bodily integrity," fit neither category. Because the Fourteenth Amendment does not protect Appellants from deprivations by private actors, this theory of recovery under § 1985 fails to state a claim. *See Bray,* 506 U.S. at 278 (recognizing that "deprivation of [a] federal right (whatever its contours) cannot be the object of a purely private conspiracy" under § 1985).

Appellants also allege a conspiracy to violate "substantive rights created under state law designed to protect children." This theory fails because § 1985 only provides a cause of action to vindicate rights "*constitutionally* protected against private

13

interference." *Id.* (emphasis added); *see also Brown*, 250 F.3d at 805 (observing that "§ 1985 does not itself create any substantive rights but acts as a vehicle to vindicate other federal rights and privileges," and explaining that plaintiffs "first must establish a violation of their *constitutional rights* in order to have a successful § 1985 claim.") (alteration, citation, and internal quotation marks omitted) (emphasis added).

Accordingly, the District Court did not err in dismissing Appellants' claims under 42 U.S.C. § 1985. And because Appellants' claims under 42 U.S.C. § 1986 are derivative of their claims under § 1985, *Clark v. Clabaugh*, 20 F. 3d 1290, 1295-96 (3d Cir. 1994), the District Court properly dismissed them as well.

For the foregoing reasons, we will affirm the decision below.