16-3675
*Sasmor v. Meisels et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of September, two thousand seventeen.

PRESENT:

> BARRINGTON D. PARKER,
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

JON SASMOR,

> *Plaintiff-Appellant*,

287 FRANKLIN AVENUE RESIDENTS' ASSOC., by Jon Sasmor, President, LISA LIN, WILLIE OSTERWEIL, KURT FLETCHER, and VILIJA SKUBUTYTE,

> *Plaintiffs*,

v.                                          No. 16-3675

CHAIM MEISELS, AKA CLIAMAH MIZELLE, CHAIM GOLDBERGER, AKA HENRY GOLDBERG, ISAAC TEITELBAUM, AKA ISAAC TITALBAUM, ABRAHAM SCHNEEBALG, NATHAN SMITH, AKA NATHAN DOE, JOSH BOSCH, AKA JOSH DOE, RONALD HENRY LAND TRUST, HENRY MANAGEMENT, LLC, PEOPLE CHOICE

REAL ESTATE, LLC, AKA PEOPLES CHOICE REAL ESTATE, L.L.C., AKA PEOPLE'S CHOICE REALTY, INC., PETER HENRY, AKA GURU, LOUIS GARCIA, JOEL KAUFMAN, KINGS COUNTY REALTY CORP., BRIAN DUDJAK, SAMUEL EMMANUS, AKA JOHN DOE #1,

*Defendants-Appellees*,

RONALD HENRY, JOE DOE, JOHN AND JANE DOES, #2 THROUGH #10, AKA JOHN AND JANE DOES, #1 THROUGH #10, JOHN DOE CORPORATIONS, #1 THROUGH #10, OTHER JOHN DOE ENTITIES, #1 THROUGH #10,

*Defendants.*[*]

_____

FOR APPELLANT:                    JON SASMOR, *pro se*, New York, NY.

FOR APPELLEES LOUIS GARCIA,
JOEL KAUFMAN, and KINGS COUNTY        MARC ILLISH, Barry R. Feerst & Assocs.,
REALTY CORP.:                         Brooklyn, NY.


Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 30, 2016, is **AFFIRMED**.

Plaintiff Jon Sasmor, proceeding *pro se*, brought claims under the civil remedy provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and New York General Business Law §§ 349 and 350 against various defendants associated with 287 Franklin Avenue in Brooklyn (sometimes, "the property" or "287 Franklin Ave."), the rooming house in which Sasmor, in April 2010, became a tenant. Sasmor sued 287 Franklin Ave.'s owners, its property manager, the real estate company that posted an advertisement for Sasmor's room on craigslist.com, and several others associated

---

[*] The Clerk of Court is directed to amend the caption to conform to the above.

with the ownership and rental of the property, all of whom, Sasmor alleges, participated or conspired to participate in a RICO enterprise involving money laundering, wire fraud, mail fraud, and extortion. The District Court granted summary judgment for Defendants on the ground that Sasmor had not suffered a cognizable RICO injury and ruled, in the alternative, that Sasmor failed to demonstrate adequately the existence of an "enterprise" under 18 U.S.C. § 1962. The court also declined to exercise supplemental jurisdiction over Sasmor's state-law claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we refer to only when necessary to explain our decision to affirm.

Reviewing the District Court's grant of summary judgment *de novo*, *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 746 (2d Cir. 1992), we conclude that Sasmor's civil RICO claims fail because he failed to demonstrate that he suffered a cognizable RICO injury. To maintain a civil RICO claim, a plaintiff must show "(1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property[;] and (3) that such injury was by reason of the substantive RICO violation." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). To make out a substantive RICO violation, a civil RICO plaintiff must show a "pattern of racketeering activity." 18 U.S.C. § 1962(a)-(c). Such a "pattern," in turn, requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The RICO statute identifies the specific crimes that may constitute "racketeering activity." 18 U.S.C. § 1961(1). These include mail fraud, wire fraud, and extortion. *Id.* To establish causation, a civil RICO plaintiff must show that the defendant's RICO violation was both the "but for" and the proximate cause of his injury. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The "but for" inquiry is typically straightforward: was the defendant's conduct the cause-in-fact of the plaintiff's harms? The proximate-cause injury, however, requires careful consideration of the "relation between the injury asserted and the injurious conduct alleged." *Id.* Sasmor contends that he suffered two RICO injuries: first, he asserts that he made a rental payment in May 2010 because of Defendants' acts of wire fraud, mail fraud, and extortion; second, he asserts that he incurred litigation expenses during the eviction proceedings that Defendants pursued against him, and that those proceedings (and

3

thus, the related expenses) resulted from Defendants' acts of mail fraud and extortion. We disagree.

First, although under New York law Sasmor was not obligated to pay rent for his room in the unregistered rooming house being operated at the property, we cannot conclude that his rental payment in May 2010 was an injury caused by a RICO violation. Sasmor argues that he "would not have moved in or paid any money" if Defendants had not misrepresented that his room was "legitimate, legal housing"—a misrepresentation that Sasmor argues constitutes "wire fraud." App'x at 353. Sasmor did not present any evidence suggesting that he would have paid lower rent, however, had Defendants not misrepresented the legal status of the room and, as a result, he had chosen to live elsewhere. Nor did he present evidence that he would have paid lower rent if Defendant Goldberger had not directed him to make out his rent check to "Isaac Titalbaum" and had instead directed him to make out his rent check to a different person or entity. App'x at 353. On the contrary, Sasmor acknowledges that the rent he paid for that room—$400 per month—was "inexpensive" for the New York City area. App'x at 352. Further, Sasmor adduced no evidence that he would have paid less for a different apartment but for Defendants' alleged wire fraud. In fact, he resided for many months at the property rent-free. We are unable to conclude that he had an entitlement to live at 287 Franklin Ave. rent-free indefinitely because of the Defendants' alleged violations.

Nor does the record provide a sufficient basis to conclude that Sasmor would not have paid his rent in May 2010 "but for" Defendant Goldberger's occasional forceful nighttime banging on the door to Sasmor's room. Sasmor attested in his declaration that he "paid the rent to [Goldberger, the property manager for 287 Franklin Ave.] because he came to my bedroom door and demanded the rent, banging loudly at night," App'x at 355, claiming that he made the payment because Goldberger came to his room and demanded that he do so, not (as he now alleges in his brief on appeal) because of Goldberger's use of allegedly extortionate force. Sasmor's subsequent decision to withhold his rent because of his belief that he was legally entitled to do so, even though Goldberger "shouted angrily" at him "on the landing outside [his] bedroom door," further erodes his claim that Goldberger's

4

allegedly extortionate acts of force were a "but for" cause of his rental payment in May 2010. *Id.* at 359.

Similarly, the record does not support the existence of a causal link between any alleged RICO predicate act and Sasmor's litigation expenses. He argues that the eviction proceedings against him in state court constituted mail fraud and extortion, pointing primarily to the success of his technical defense during those proceedings. Sasmor alleges in particular that Defendants fraudulently misrepresented in those proceedings that, under New York law, the Ronald Henry Land Trust had the capacity to sue and own property. Sasmor also alleges that Defendants argued during one of the eviction proceedings that he and other tenants had were jointly and severally responsible for rental costs for the entire property. Although Sasmor correctly argued that the Ronald Henry Land Trust lacked legal capacity to maintain eviction proceedings against him, he has not presented evidence sufficient to transform Defendants' assertion of a losing legal position in state court into mail fraud or extortion. These "misrepresentations" during the eviction proceedings are no more than litigation positions taken on legal questions. The record does not support an inference that Defendants' design was to defraud Sasmor by taking incorrect legal positions during eviction proceedings pursued by them when he refused to pay rent or vacate the premises. *See* 18 U.S.C. § 1341 (mail fraud requires that fraudulent mailings be made "for the purpose of executing" a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses").

Nor has Sasmor presented evidence sufficient to establish that the very act of pursuing the eviction proceedings amounted to extortion. Section § 1951(b)(2) of United States Code, title 18, defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Improperly brought litigation without more, however, does not constitute the kind of "wrongful use of force" required for the offense of extortion. *See, e.g.*, *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257-58 (10th Cir. 2003) ("[M]eritless litigation is not extortion under § 1951.") (collecting cases holding same). Accordingly, Sasmor did not

5

incur these litigation expenses as a result of a RICO violation and in this respect, too, Sasmor has not shown that he suffered a RICO injury.

Because Sasmor has not demonstrated a RICO injury, we affirm the District Court's grant of summary judgment in Defendants' favor on his federal RICO claims.[1] Relatedly, on abuse of discretion review, we affirm the District Court's decision not to exercise supplemental jurisdiction over Sasmor's state-law claims. *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 85 (2d Cir. 2013) (observing that it was "well within the District Court's discretion" to decline to exercise supplemental jurisdiction after dismissing federal claims).

Finally, we reject Sasmor's challenge to the District Court's denial of his request for additional discovery of certain bank records. A district court's discovery ruling is reversible "only upon a clear showing of an abuse of discretion." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (internal quotation marks omitted). Here, the District Court acted well within its discretion in concluding that the requested discovery was unlikely to lead to relevant evidence and that permitting Sasmor to go forward would require an unwarranted extension of the discovery deadline. Moreover, the discovery that Sasmor requested had the potential to bear only on his claim that Defendants were engaged in money laundering, and

---

[1] In addition, we decline to vacate the District Court's judgment entered in favor of the defaulting Defendants. Sasmor was not prejudiced by the District Court's decision to enter summary judgment *sua sponte* for the defaulting Defendants, because he briefed the relevant issues in his own motion for partial summary judgment and his opposition to the moving Defendants' motions for summary judgment. *See Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) ("[T]he threat of procedural prejudice [resulting from a district court's decision to *sua sponte* grant summary judgment in favor of a non-moving party] is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party."). We note further that, although a defaulted defendant is ordinarily deemed to have admitted the facts alleged in the complaint, "liability is not deemed established simply because of the default" and "the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A C. Wright & A. Miller, Fed. Practice and Procedure Civ. § 2688.1 (4th ed.); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (explaining that a district court has discretion to require proof of necessary facts once default is determined). Because Sasmor did not prove that he sustained damages stemming from a cognizable RICO injury caused by the non-defaulting Defendants, we see no reason to presume that he could make any satisfactory showing as to the other Defendants, whom he alleged were all part of a single scheme. Any procedural irregularities committed by the District Court in *sua sponte* vacating the orders of default were therefore harmless.

6

not on his allegations of a RICO injury. It therefore could not have affected the merits disposition of his claim.

*     *     *

We have considered the remainder of Sasmor's arguments and conclude that they are without merit.  Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court