**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MOORING CAPITAL FUND, LLC;
MOORING FINANCIAL
CORPORATION,

              Plaintiff-Counter-
              Defendants-Appellees,

v.

JUDY KNIGHT; PHOENIX
CENTRAL INC., an Oklahoma
corporation,

              Defendant-Counter-
              Claimants-Appellants.

Nos. 09-6075 & 09-6141
(D.C. No. 5:06-cv-00006-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

The commencement of a foreclosure action by Mooring Capital Fund, LLC

(Capital) against borrower Phoenix Central Inc. (Phoenix) prompted Phoenix to

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

bring tort and contract counterclaims against Capital. In addition, Phoenix's president and sole shareholder, Judy Knight, pursued similar claims in her individual capacity against both Capital and its servicing agent, Mooring Financial Corporation (Financial). The foreclosure action settled, leaving only Phoenix's counterclaims and Ms. Knight's claims.

At the close of evidence at trial, the district court granted judgment as a matter of law to Capital and Financial on Ms. Knight's claims because she was unable to show that she individually had suffered any damages that were separate from Phoenix's alleged damages. As for Phoenix's counterclaims, the jury found for Phoenix on one counterclaim and for Capital and Financial on the others. The district court then granted in part both parties' motions for attorney fees, ordering Capital to pay fees to Phoenix and ordering Ms. Knight to pay fees to Capital and Financial. In appeal No. 09-6075, Phoenix (through counsel) appeals the jury verdict and Ms. Knight (proceeding pro se) appeals the grant of judgment as a matter of law. In appeal No. 09-6141, Phoenix appeals the fee award of $49,000 (much less than the $224,392.17 it had requested) and Ms. Knight appeals the fee award against her.

Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the district court did not err in its pretrial and trial rulings, and therefore we affirm the judgments underlying appeal No. 09-6075. We also affirm both attorney-fee awards in appeal No. 09-6141.

## I.    BACKGROUND

In 1992 Phoenix and Ms. Knight executed a promissory note secured by a mortgage on a shopping center owned by Phoenix (the Shopping Center).  In 1993 that note was replaced by an amended note (the Note), and eventually the holder of the Note transferred it to Capital.  In 2004 Ms. Knight and Phoenix planned to refinance the Shopping Center and use the proceeds of the refinancing to repair and sell one or more vacant rental houses and to develop a separate 40-acre parcel of land (the 40-Acre Parcel) into a residential subdivision.  To accomplish the refinancing, they needed to pay off the Note; but Capital could not or would not provide an accurate payoff amount.

After Phoenix and Ms. Knight stopped making payments on the Note in February 2005, Capital initiated a state-court action against Phoenix to recover on the Note and to foreclose on the Shopping Center.  Citing diversity jurisdiction, Phoenix removed the action to federal court.  Phoenix also brought several counterclaims seeking damages for not being able to accomplish the refinancing and therefore not being able to develop the 40-Acre Parcel.  In its third amended answer and counterclaim Phoenix alleged that Capital breached the Note's implied covenant of good faith and fair dealing and was liable for negligence, tortious interference with prospective business relations, and tortious breach of contract.  The district court granted partial summary judgment in favor of Capital with respect to liability (but not damages) on its claims.  Initially, it also granted

Capital summary judgment on all of Phoenix's counterclaims, except the counterclaim for breach of the implied covenant of good faith and fair dealing; but in March 2008 the court vacated that order because Capital had turned over additional discovery containing facts favorable to Phoenix.

In the meantime, Ms. Knight and another of her companies, Mini Malls of America, filed a separate state-court action against Capital and Financial. Capital and Financial removed the action to federal court, and the court consolidated that action with the foreclosure proceeding. The district court dismissed the state-complaint claims because Ms. Knight and Mini Malls had not "state[d] a basis for recovery separate and apart from whatever harm Phoenix may have suffered," but allowed them leave to amend. No. 09-6075, Aplt. App. Vol. II at 437. They filed an amended complaint, which the court dismissed. The court held that Mini Malls had shown only an attenuated relationship with Capital that was insufficient to create any legal duty owed by Capital. The court also held that Ms. Knight, as a party to the Note, may have claims against Capital that paralleled Phoenix's counterclaims, but the allegations in the amended complaint did not adequately plead tort liability under applicable Oklahoma law. The court allowed Ms. Knight leave to amend her complaint once again to set forth claims paralleling Phoenix's claims. Ms. Knight's second amended complaint set forth claims of breach of the implied covenant of good faith and fair dealing,

negligence, tortious breach of contract, and tortious interference with present and prospective business relations. The court allowed these claims to proceed.

In November 2008 Phoenix and Ms. Knight satisfied the Note, so the foreclosure action was dismissed. Before trial on Phoenix's counterclaims and Ms. Knight's claims, the district court made several evidentiary rulings relevant to this appeal No. 09-6075. First, the district court limited the testimony of Phoenix's expert economist, Dr. James Horrell, under the principles expressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999). Second, the court barred Ms. Knight from testifying about lost profits from the failure to develop the 40-Acre Parcel and the rental houses. Third, the court indicated that it would be inclined to prohibit lay witnesses from giving opinion testimony about "expert" matters such as projecting development costs or the process of platting a subdivision, although they could testify to historical facts concerning the 40-Acre Parcel. Fourth, the court excluded from evidence a 2004 appraisal of the Shopping Center prepared for another lender. Fifth, the court prohibited introduction of any evidence of damages to Mini Malls. Finally, the court held that Phoenix and Ms. Knight could not claim as damages the bulk of the attorney fees that they had incurred during the dispute.

At the jury-instruction conference, Ms. Knight's counsel stated that in light of the district court's evidentiary rulings concerning the 40-Acre Parcel and the

rental houses, Ms. Knight had to concede that she would not be able to establish her own individual damages, as distinguished from Phoenix's corporate damages. Accordingly, the district court granted judgment as a matter of law to Capital and Financial on her claims, leaving only Phoenix's counterclaims for the jury. The court instructed the jury on breach of the implied covenant of good faith and fair dealing, tortious breach of contract based on gross recklessness/wanton negligence, tortious interference with business relationships, and tortious interference with prospective economic advantage. It rejected, however, Phoenix's request to instruct the jury on a claim of gross negligence. The jury found in favor of Phoenix on its contract counterclaim and in favor of Capital on the three tort counterclaims; and it awarded $8,980 in damages to Phoenix.

Both sides sought attorney fees. Capital and Financial requested a fee award of $306,644.34 against Ms. Knight (but not against Phoenix); and Phoenix requested an award of $224,392.17 against Capital and Financial. Without holding a hearing on the fee motions, the district court applied Okla. Stat. tit. 12, § 936 and granted both motions in part. It ordered Capital to pay Phoenix's fees in the amount of $49,000 and Ms. Knight to pay Capital's and Financial's fees in the amount of $88,000. Phoenix and Ms. Knight appeal both the judgments on the merits and the fee awards.

## II.    ANALYSIS

### A.    Appeal No. 09-6075

This appeal concerns the merits dispositions of Phoenix's counterclaims and Ms. Knight's claims.

#### 1.    Phoenix's Arguments

Phoenix primarily takes issue with the district court's evidentiary rulings, but it also contends that the district court should have instructed the jury on gross negligence.

##### a.    Exclusion of Evidence Regarding 40-Acre Parcel

Several of Phoenix's arguments concern the district court's exclusion of evidence regarding the 40-Acre Parcel.  Phoenix contests the exclusion of Dr. Horrell's testimony on the financial consequences of the failure to develop the parcel; the exclusion of other testimony on the damages from the failure to develop the parcel; and the exclusion of certain opinion testimony from lay witnesses regarding the development of the parcel.

The court provided two reasons for excluding evidence of damages from failure to develop the 40-Acre Parcel and the rental houses.  To begin with, it said (a) that such damages could not be recovered under the contract claim because there was no evidence that such damages were within the contemplation of the parties at the time the Note was made and (b) that such damages could not be recovered under the tort claims because there was no evidence that they were

-7-

foreseeable at the time of the alleged torts.  Second, it said that there was no admissible evidence of any lost profits from the parcel and the rental houses because (1) the parties could not call lay witnesses to testify about expert topics such as the platting process and development costs, and (2) Ms. Knight had not been named as an expert witness and she did not have the business experience to testify about the development process.

Phoenix disputes the court's evaluation of Ms. Knight's qualifications to testify about the 40-Acre Parcel.  Its opening brief, however, fails to address the court's other reason for excluding her damages testimony—that the damages she sought to recover were not within the parties' contemplation at the time of contracting or foreseeable at the time of the alleged torts.  Arguments not raised in the opening brief are waived.  *See City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009).  Phoenix, then, has waived any challenge to the court's first rationale for barring Ms. Knight's testimony about the 40-Acre Parcel.  For the same reason, we will not reverse the district court's decisions to bar other testimony (by Dr. Horrell and the lay witnesses) concerning the 40-Acre Parcel and the rental houses.

**b.    Exclusion of Dr. Horrell's Shopping Center Testimony**

Phoenix designated Dr. Horrell to testify not only about the 40-Acre Parcel but also about excess expenses that Phoenix had incurred and the lost rental

income from the Shopping Center due to the inability to refinance. But the district court limited his testimony on these other matters to mathematical calculations.

With regard to the Shopping Center, the court noted that Dr. Horrell relied on the 2004 appraisal of the Shopping Center in proposing to testify "that the shopping center would have generated net revenues equal to that projected in the 2004 appraisal." No. 09-6075, Aplt. App. Vol. I at 166. Although the court acknowledged that an expert could rely on the opinions of another expert, it stated that "Dr. Horrell's references to the 2004 report do not suggest that he made any systematic effort to evaluate the methods employed in the appraisal or to evaluate its applicability to the present circumstances." *Id.* at 169. "There is no indication that he has any particular background in real estate leasing operations or that he undertook any investigation to independently determine what the leasing activity for a shopping center of this sort in this location would have generated." *Id.* at 170. Accordingly, the court held that "any opinion testimony as to what lease revenues from the shopping center would have been in various circumstances, or as to the reasonableness of the 2004 report's assumptions, must be excluded." *Id.*

As for the alleged excess expenses, the court noted that "the listing of 'excess expenses' incurred by defendants is based entirely on information defendants provided to Dr. Horrell." *Id.* at 164. The court was concerned that Dr. Horrell would testify "that defendants' estimates of future real estate sales

activity or of 'excess' expenses or the like are reasonable." *Id.* at 166. "It is clear," said the court, "that Dr. Horrell has neither undertaken any systematic investigation or independent analysis of the reasonableness of what defendants claim as their excess expenses nor has a basis for assessing the reasonableness of defendants' projections . . . ." *Id.* at 171 (footnote omitted). The court concluded: "His relatively limited efforts at verifying whether Ms. Knight has some document or basis for the estimates <u>she</u> makes fall far short of providing a basis for [him] to opine that the estimates or projections are reasonable. He therefore cannot take Ms. Knight's estimates and present them in such a way as to make them sound like they are his." *Id.*

Phoenix contends that Dr. Horrell was qualified to offer the opinions that he submitted; that he was entitled to make assumptions, provided those assumptions could be proved at trial; and that he had tested his information against the actual facts as they became known. Because Phoenix does not claim that "the district court failed to employ the proper legal framework required by *Daubert*, we consider only whether the district court abused its discretion in actually applying this framework to the testimony at hand." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006). "We will not . . . disturb a district court's ruling absent our conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

The district court did not abuse its discretion in limiting Dr. Horrell's testimony. Fed. R. Evid. 702 requires an expert's testimony to be "based upon sufficient facts or data" and to be "the product of reliable principles and methods" which have been "applied . . . reliably to the facts of the case." "Under *Daubert*, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) (ellipsis and internal quotation marks omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The district court offered cogent rationales supported by the record for limiting Dr. Horrell to presenting numerical calculations regarding damages. Dr. Horrell's years of experience and other qualifications do not overcome the district court's concern about lack of independent investigation in this case. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir.) (en banc), *cert. denied*, 130 S. Ct. 54 (2009) ("Although [the expert] generally has been permitted to testify in the past, and a district court might well respect his credentials, the court had an obligation to assess the methodology that [the expert] had employed in the

case at hand."). Regarding the appraisal, Dr. Horrell admitted in his deposition that he had not examined the validity of the appraiser's assumptions. An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert. *See TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (expert who adopted the projections of another expert did not reasonably rely on those projections when "he knew little or nothing at all about" the other expert and the record did not reveal what efforts the expert independently made to corroborate the projections). And as to the calculations of expenses, the district court did not abuse its discretion in disallowing testimony that would simply adopt and confirm what Ms. Knight had said. *Cf. Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006) (it was not "'manifestly unreasonable' for the district court to conclude that [the expert's] opinions lacked foundation because they were based on 'the self-serving statement[s] of an interested party'").

### c. Exclusion of Ms. Knight's Testimony About Shopping-Center Appraisal

The district court barred Ms. Knight from testifying about the 2004 appraisal. First, the district court believed that Ms. Knight's testimony would be essentially about someone else's expert opinion rather than testimony based on her own experience. Second, the district court indicated that the appraisal would

-12-

be hearsay that did not fall under the business-record exception of Fed. R. Evid. 803(6).

In its opening brief Phoenix argues that the appraisal qualified as a business record, but does not address the district court's first ground for barring the appraisal report. Thus, as with its other challenge to limitations on Ms. Knight's testimony, it has waived any argument regarding that first ground, so we need not address its arguments with regard to the second.

### d. Exclusion of Attorney Fees as Consequential Damages

Phoenix challenges the district court's ruling that it could not claim as damages the bulk of its attorney fees. Relying on *Phillips v. Snug Harbor Water and Gas Co.*, 596 P.2d 1273, 1276 (Okla. App. 1979), the district court held that Oklahoma law allows recovery of prelitigation attorney fees, but that fees incurred during the litigation were properly considered items of costs rather than damages. Phoenix argues that it is entitled to recover as damages all the attorney fees incurred in attempting to resolve the issue of a correct payoff balance, which was not determined until August 2007, well after the lawsuit was underway.

In a diversity case, we apply the substantive law of the forum state, in this case Oklahoma. *See Hjelle v. Mid-State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir. 2005). We review the district court's interpretation of Oklahoma law de novo. *See id.*

Phoenix finds some support in *Phillips*. In that opinion the Oklahoma Court of Appeals held that a plaintiff's damages included lost time and expense caused by the defendant's actions, 596 P.2d at 1276; and among the expenses supporting the award, the court included the hiring of an attorney "to invoke the aid of the corporation commission." *Id.* But *Phillips* notwithstanding, "[t]here appears to be no all-encompassing Oklahoma rule that attorney fees are or are not 'compensatory damages.'" *Employers Reins. Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 767 (10th Cir. 2004). For example, the Oklahoma Court of Appeals wrote after *Phillips*, "Damages at common law have never included interest, fees and costs. Moreover, there was no right to attorney's fees at common law, so any award thereof must be of statutory origin." *Allison v. City of El Reno*, 894 P.2d 1133, 1137 (Okla. App. 1994). And in *Barnes v. Oklahoma Farm Bureau Mutual Insurance Co.*, 11 P.3d 162, 181 (Okla. 2000), the state's highest court provided the following list of situations in which attorney fees may be awarded, absent a statutory or contractual provision, as an item of damages in a contract or tort suit: (1) when an attorney sues the client to recover fees, (2) when an insurer wrongfully refused to defend a prior lawsuit, or (3) when the defendant's actions "involved the plaintiff in litigation with others, or have placed him in such relation with others as to make it necessary for him to incur attorney fees to protect his interests." This list does not include the circumstances of this case. Therefore, we conclude that the district court did not err in barring Phoenix

-14-

from seeking, as an element of damages, an award of the attorney fees it incurred during the litigation.[1]

### e.  Jury Instruction on Gross Negligence Based on Reckless Disregard

The district court instructed the jury on tortious breach of contract based on "gross recklessness or wanton negligence."  No. 09-6075, Aplt. App. Vol. I at 46. Phoenix contends that the jury also should have been allowed to impose liability under what it terms the lesser "reckless disregard" standard.  We review the refusal to give a jury instruction for abuse of discretion, *see Telecor Commun., Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1141 (10th Cir. 2002); but our review is de novo to the extent that we must interpret the substantive law of Oklahoma*, see Hjelle*, 394 F.3d at 877.[2]

---

[1]  Phoenix also asserts that Capital acted in bad faith during the litigation, prolonging the suit and causing Phoenix to incur useless fees.  We do not consider this contention because Phoenix has failed to supply any record cites to show where it made such an argument in the district court in connection with the damages issues.  *See* Fed. R. App. P. 28(a)(9)(A); 10th Cir. R. 28.2(C)(2). "Arguments inadequately briefed in the opening brief are waived," *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998), and arguments not raised before the district court are waived on appeal, *see Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005).

[2]  The record is not clear whether Phoenix preserved this issue.  Although Phoenix requested a gross-negligence instruction, it also seemed to accede to the court's desire to simplify the tort theories.  *Compare* No. 09-6075, Aplt. App. Vol. III at 651-54 (arguing for a gross-negligence instruction), *with id.* at 654 ("So in terms of the simplicity of the instructions, if that's what the Court's leaning is to simplify the tort theories into one, I would not have any basic disagreement with that approach.").  But because ultimately Phoenix rested on its

(continued...)

In the commercial-lending context, Oklahoma does not recognize a tort claim for any conduct less culpable than gross recklessness or wanton negligence. *In Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1227 (Okla. 1988), the court said: "To impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions. This is not to say that under every fact situation arising from a breach of contract that recovery may never lie. Gross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract." *See Beshara v. S. Nat'l Bank*, 928 P.2d 280, 288 (Okla. 1996) (recognizing the *Rodgers* standard and allowing plaintiff to proceed with allegations that the bank's action in withholding his funds were "intentional, malicious, and in reckless and wanton disregard"); *First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993) (reaffirming *Rodgers*). It is not clear to us how "reckless disregard" differs from "gross recklessness." But whatever the difference, if any, we see no abuse of discretion in the district court's adoption of the gross-recklessness-or-wanton-negligence formulation expressed in the leading Oklahoma Supreme Court decision on the matter. We affirm the denial of an additional instruction on reckless disregard.

---

[2](...continued)
desire for the instruction, *see id.* at 654 (indicating a possible miscommunication of counsel's position); *id.* at 663 (reiterating need for gross-negligence argument), and because we reject Phoenix's position even under the more favorable standard of review, we need not resolve whether the issue was preserved.

### 2. Ms. Knight's Arguments

Ms. Knight, proceeding pro se, has filed a separate brief. We decline to consider her arguments regarding Phoenix's issues, because she is not a lawyer and thus cannot represent Phoenix in court. *See Tal v. Hogan*, 453 F.3d 1244, 1254 & n.8 (10th Cir. 2006) (collecting cases). For that reason, as well as Mini Malls' failure to appeal, we also decline to consider her argument that the district court erred in dismissing Mini Malls' claims. Further, to the extent that she adopts Phoenix's arguments regarding the limitations on testimony by Dr. Horrell and herself, the discussion above applies equally here. We now proceed to analyze her remaining issues.[3]

### a. Negligence Claims

Ms. Knight argues that the district court should have allowed her to proceed with claims of negligence, negligent nondisclosure, and negligent misrepresentation. The district court dismissed these claims on the ground that Oklahoma requires more than mere negligence to impose tort liability on a commercial lender. As discussed above, this appears to be a correct reading of Oklahoma law. *See Rodgers*, 756 P.2d at 1227; *see also Beshara*, 928 P.2d at 288; *First Nat'l Bank & Trust Co. of Vinita*, 859 P.2d at 509.

---

[3] Ms. Knight's opening brief argues that the district court erred in granting summary judgment to Capital and Financial. We cannot determine the purpose of the argument. The district court later vacated that summary judgment and let the claims proceed to trial; and the court's reasoning in initially granting the summary judgment was irrelevant to its disposition of Ms. Knight's own claims.

### b. Dismissal of Other Claims

Ms. Knight argues that the district court should have allowed her to pursue claims of negligence per se, usury, conversion, fraud, unjust enrichment, and violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA).[4]  These claims fall into two categories:  (1) claims that were asserted initially, but were dismissed with leave to amend and not reasserted (or at least not timely reasserted); and (2) claims that apparently never were asserted (or at least never asserted properly).

Claims that were asserted, but dismissed and not reasserted.  Ms. Knight's state complaint asserted claims for conversion and deceit.  The district court dismissed this complaint in its entirety because it failed to show how Ms. Knight's damages were different from Phoenix's; but the court granted Ms. Knight leave to file an amended complaint.  The court did not indicate that any particular claim was ineligible for repleading.  Yet neither the amended complaint nor the second amended complaint reasserted claims for conversion or deceit.

---

[4]      In her summary of argument Ms. Knight also mentions the dismissal of her claim for intentional infliction of emotional distress, which the district court dismissed on the merits.  But because her brief does not develop the issue beyond this cursory identification, we consider it waived.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir.1998) ("Arguments inadequately briefed in the opening brief are waived.").

An amended complaint supersedes a prior complaint "and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotation marks omitted). When a claim has been dismissed on the merits, a party may file an amended complaint omitting that claim without waiving an appellate challenge to the dismissal. *See id.* at 1517-18. But the district court's order in this case did not "conclusively rule[]" on the conversion or deceit claims. *Id.* at 1518. The court simply noted that Ms. Knight had to plead individual damages if she wished to assert individual claims. All the claims in the original complaint were dismissed for the same reason; nothing in the district court's order suggested that the additional allegations needed to state one of the claims properly would not also cure the defect in the other claims. Hence, there was no compulsion from the court to abandon any particular claim. Yet rather than repleading the conversion and deceit claims, as allowed by the district court, Ms. Knight filed a second amended complaint that did not include them. The omission resulted in abandoning these claims.

Ms. Knight did include conversion as a legal issue in the amended final pretrial report. The district court anticipated adopting the pretrial report as the pretrial order, and the inclusion of a claim in the pretrial order can supersede the pleadings, *see Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007). For two reasons, however, we do not consider the pretrial report to have amended the pleadings in this case. First, the district court specifically ruled that

it would not allow the pretrial report or order to revive or expand the claims at issue beyond the already asserted claims of breach of contract, bad faith breach of contract, and tortious interference. Second, Ms. Knight does not appear either to argue that the pretrial order actually amended the pleadings, or to explain why the district court should have allowed an eve-of-trial amendment to the pleadings.

Claims that never were asserted. Finally, it does not appear that Ms. Knight ever properly tried to assert claims for negligence per se, usury, unjust enrichment, or violation of the FDCPA. None of these claims was included in the removed state complaint, the amended complaint, or the second amended complaint. Negligence per se and unjust enrichment were raised in the amended final pretrial report, but as we have just discussed, the district court ruled that the pretrial order could not revive or expand the claims at issue, and Ms. Knight does not appear to challenge the refusal to allow an eve-of-trial amendment. Thus, there was no reason for the district court to instruct the jury on those claims.

### c. Individual Damages

Ms. Knight argues that the district court erred in barring evidence of her individual damages—namely, lost profits from the inability to sell the rental houses and the failure to develop the 40-Acre Parcel. The evidence excluded was lay-witness opinion testimony regarding such matters as the platting and subdivision process for the 40-Acre development and Ms. Knight's own opinion testimony about damages suffered from the delay in the development caused by

Capital and Financial. As with expert testimony, the exclusion of lay-witness testimony is reviewed for abuse of discretion. *See Zokari v. Gates*, 561 F.3d 1076, 1088 (10th Cir. 2009).

The district court did not abuse its discretion in excluding this evidence. The subject matter of the proffered testimony was not what the witnesses had personally observed but opinion testimony regarding possible future occurrences. The court reasonably decided that such opinions could be provided only by qualified experts. Yet the witnesses had not been listed as expert witnesses. As for Ms. Knight, it is true that business owners may be qualified to testify about lost profits when (1) "the owners had sufficient personal knowledge of their respective businesses *and* of the factors on which they relied to estimate lost profits" or (2) "the owners offered valuations based on straightforward, common sense calculations." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004) (collecting cases). But as the district court noted, Ms. Knight had no experience in land development and had never conducted a business with respect to the vacant houses. Notwithstanding the research that she had conducted to prepare for the development, the court could rationally decide that she did not have sufficient knowledge of these businesses to qualify for the business-owner exception. *Cf. Malloy v. Monahan*, 73 F.3d 1012, 1016-17 (10th Cir. 1996) (allowing business owner's testimony when he had "substantial experience in the purchase, rehabilitation, and sale of distressed properties").

-21-

And her plans and projections went beyond straightforward common-sense calculations.

Because of the exclusion of this evidence, the district court properly dismissed Ms. Knight's claims. One necessary element of each claim was lost profits. We recognize that "[t]he general rule under Oklahoma law allows for the recovery of anticipated lost profits if the loss is capable of reasonably accurate measurement or estimate." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1178 (10th Cir. 2008) (emphasis and internal quotation marks omitted). But the district court did not abuse its discretion in holding that, on the admissible evidence before it, any lost profits from the sale of the rental houses and the development of the 40-Acre Parcel were not capable of reasonably accurate measurement or estimate.

For these reasons, we affirm the judgment underlying appeal No. 09-6075.

### B.    Appeal No. 09-6141

This appeal concerns the district court's orders that Capital pay Phoenix $49,000 in attorney fees, and that Ms. Knight pay Capital and Financial $88,000 in attorney fees. "In diversity cases, attorney fees are a substantive matter controlled by state law." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008). "Oklahoma strictly adheres to the American rule concerning attorney's fees," which generally requires that fees be authorized by a statute or a contract. *Id.* (internal quotation marks omitted); *see Barnes*, 11 P.3d at 178-79.

-22-

The parties and the district court relied on Okla. Stat. tit. 12, § 936 to support both awards.[5]  "We review the legal principles underlying an award de novo," but the reasonableness and amount of a fee award for abuse of discretion.  *Combs*, 551 F.3d at 1001.

### 1.     Award to Phoenix

Phoenix appeals the fee award of only $49,000 on its claim for an award of $224,392.17 in attorney fees.  It argues that the district court erred in not holding a hearing on its fee motion, by misapplying Oklahoma law regarding the

---

[5]     Before the district court, Capital and Financial sought fees under both § 936 and the terms of the Note.  The district court awarded fees only under § 936, however, and Capital and Financial do not renew on appeal their argument that the Note entitled them to a fee award against Ms. Knight.  Thus, this argument is waived.  *See City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) (arguments not made in the opening brief are waived).

It is not clear that Oklahoma would hold that a claim for breach of the implied covenant of good faith and fair dealing is a claim encompassed by § 936. *See, e.g.*, *Specialty Beverages*, 537 F.3d at 1184 ("[W]e have previously decided that the Oklahoma Supreme Court narrowly interprets all provisions of § 936."); *Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., L.L.C.*, 164 P.3d 1063, 1069 (Okla. 2007) ("Section 936 applies to a party who is successful on a contract claim *as specified therein . . . .*" (emphasis added)); *Borst v. Bright Mort. Co.*, 824 P.2d 1102, 1104 (Okla. 1991) (§ 936 does not apply when the prevailing party sought to cancel a note, not to collect on it).  But as with the Note argument, the parties have not argued on appeal that this claim is not among the fee-bearing claims listed in § 936.  And they did not raise such an argument before the district court.  Thus, any such argument also is waived.  *See City of Colo. Springs*, 589 F.3d at 1135 n.5; *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (arguments not raised before the district court are waived on appeal).

calculation of fee awards, and by failing to make factual findings conforming to the evidence.

Phoenix argues that Oklahoma requires an evidentiary hearing before awarding attorney fees. We are not persuaded. Although the general practice may be to hold a hearing, a federal district court is not *always* required to hold a hearing to establish an adequate record on a fee request under Oklahoma law. *See Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 773-74 (10th Cir. 1999). We review the decision not to hold a hearing for abuse of discretion. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998). As in *Robinson*—also an appeal arising from a federal district court in Oklahoma—Phoenix has "been unable to point to any indication in the record that [it] requested a hearing." *Id.* "Ordinarily, a district court does not abuse its discretion in deciding not to hold an evidentiary hearing when no such request is ever made." *Id.*[6]

Phoenix next argues that the district court incorrectly performed the two-part analysis of *State ex. rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okla. 1979), for awarding attorney fees. It contends that the court failed to identify the hourly rate or the number of hours to set the lodestar fee amount, *see*

---

[6] It appears that the first—and only—request for a hearing appeared in a pro se motion for reconsideration filed by Ms. Knight. As stated above, as a nonattorney, Ms. Knight could not represent Phoenix in this litigation. *See Tal v. Hogan*, 453 F.3d 1244, 1254 & n.8 (10th Cir. 2006) (collecting cases).

*id.* at 660–61, and failed to apply all the *Burk* factors for adjusting the lodestar, *see id*. at 661. Phoenix also claims that the court erred in its assessment of the evidence.

Phoenix's characterization of the district court's decision is inaccurate. Phoenix set its lodestar at $224,392.17. The court accepted this calculation and proceeded to adjust that figure in light of the *Burk* factors to arrive at a reasonable fee. *See Burk*, 598 P.2d at 661. The court observed that both parties' fees were unreasonable, due to multiple sets of counsel and the ineffective use of attorneys; that both parties contributed to the excessive fees; and that Phoenix's counsel spent some time on Phoenix's tort claims and Ms. Knight's counterclaims, which were unsuccessful. It also placed particular importance on the amount in controversy and the amount of recovery, only $8,980. The court properly considered these latter factors to be significant, as Oklahoma requires that an attorney fee be "reasonable in light of the amount sued for and recovered." *Sw. Bell Tel. Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1188 (Okla. 1987); *see also id.* at 1190. In these circumstances, we are not persuaded that the district court abused its discretion in determining that $49,000 was a reasonable fee. We therefore affirm the fee award to Phoenix.

### 2. Award to Capital and Financial

In appealing the fee award of $88,000 to Capital and Financial, Ms. Knight argues that the district court erred in giving no weight to her pro se response; that

the court erred in awarding fees to Capital and Financial based on her contract claim even though she was similarly situated to Phoenix, which was successful on its contract claim; that the award was excessive; and that Capital and Financial do not deserve an award of fees because of their bad faith and misconduct. (To the extent that Ms. Knight also adopts arguments made by Phoenix, they fail for the reasons discussed above.)

The district court declined to consider Ms. Knight's pro se response to Capital and Financial's attorney-fee motion. We acknowledge that three days before Ms. Knight filed her pro se response, she filed notice that she wished to proceed pro se. Still, the district court did not commit reversible error in giving no weight to the response. The response was not restricted to Ms. Knight's position, but purportedly also was submitted on behalf of Phoenix, an entity which Ms. Knight could not represent in court. In addition, it was somewhat duplicative of the response filed by counsel. On appeal Ms. Knight has not identified any argument in her pro se response that would have changed the result.

Ms. Knight also asserts that she prevailed in substance, and complains that Capital and Financial should not be able to recover fees on the contract claim because she and Phoenix (which was successful on its contract claim) were similarly situated. But legally she did not prevail, and she and Phoenix were not similarly situated. Damages are an essential element of a claim for breach of contract. *See Digital Design Group, Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843

(Okla. 2001). Phoenix had evidence of damages and proved a portion of its claimed damages to the jury's satisfaction. In contrast, as discussed in No. 09-6075, Ms. Knight did not have any admissible evidence of individual damages. Thus, Phoenix was successful with its claim, whereas judgment was entered in favor of Capital and Financial on her claim.

Ms. Knight also argues that the amount of the award was excessive because the district court gave too much weight to Capital and Financial's evidence, did not properly weigh that Capital and Financial created the situation that led to increased fees, failed to consider that Ms. Knight did not enter the case until January 2008, and failed to consider that Capital and Financial would have borne the same expenses if Phoenix had been the only party. We see no abuse of discretion in the court's award. The court noted that both sides bore some responsibility for "a small to medium sized problem blossoming out of control." No. 09-6141, Aplt. App. Vol. II at 472. The court recognized that Capital and Financial improperly sought fees for time periods before Ms. Knight became a party. It thoughtfully reviewed the case, taking into account "the time spent on Ms. Knight's claims versus those involving Phoenix, the apportionment necessary to reflect time attributable to only the contract-based claim asserted by Ms. Knight against Mooring, and all surrounding circumstances" in arriving at its fee award. *Id.* at 476. Although Ms. Knight claims the district court erroneously believed that she and Phoenix "persistently" refused "to ever offer their

suggestion as to what the appropriate payoff balance was," *id.* at 475, we will not reweigh the evidence. There is record support for the district court's view.

Finally, Ms. Knight contends that Capital and Financial are not entitled to an award of attorney fees because of their bad faith. "To strictly apply the American Rule in this case would be to do a great injustice to Knight and reward Mooring for its oppressive acts." Knight Aplt. Br. at 29. But the district court declined to find that Capital and Financial acted in bad faith. Further, the district court assessed blame for the protracted litigation on all parties, not just Capital and Financial. These determinations exhibit no abuse of discretion.

## III.  CONCLUSION

In appeal No. 09-6075, we GRANT the motion of Mooring Capital Fund, LLC, and Mooring Financial Corporation to file a surreply, DIRECT that the tendered surreply be filed, and AFFIRM the judgment of the district court.

In appeal No. 09-6141, we AFFIRM the judgment of the district court.

Entered for the Court

Harris L Hartz
Circuit Judge

-28-