PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FILED
United States Court of Appeals
Tenth Circuit

**April 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

JUDY KNIGHT,

      Plaintiff - Appellant,

and

PHOENIX CENTRAL, INC.; MINI
MALLS OF AMERICA; JOHN DOE,
unknown investors in Mooring #1 thru
xx; JANE DOE, unknown investors in
Mooring #1 thru xx,

      Plaintiffs,

v.

MOORING CAPITAL FUND, LLC;
MOORING FINANCIAL
CORPORATION; JOHN JACQUEMIN,

      Defendants - Appellees,

and

DAVID NALLS; JOHN DOE; JANE
DOE; COUNSELS AND AGENTS OF
DEFENDANTS,

      Defendants.

No. 13-6112

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:13-CV-00129-HE)**

Submitted on the briefs:[*]

Judy Knight, filed a brief *pro se*.

Leif E. Swedlow, Andrews Davis, P.C., Oklahoma City, Oklahoma, for Defendants - Appellees.

_____

Before **HARTZ**, **McKAY**, and **BALDOCK**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Judy Knight appeals from the dismissal of her lawsuit on the grounds of untimeliness, failure to state a claim, and claim preclusion (res judicata). We affirm the judgment below. Most of our reasons for affirmance are routine. But this appeal does raise interesting questions regarding claims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, based on alleged misconduct in prior litigation.

## I. Background

In 2010 this court decided two appeals involving claims and cross-claims between, on one side, Ms. Knight and her company Phoenix Central Inc. (Phoenix), an Oklahoma corporation, and, on the other side, Mooring Capital Fund, LLC (Capital) and Mooring Financial Corporation (Financial). *See Mooring Capital*

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

*Fund, LLC v. Knight*, 388 F. App'x 814 (10th Cir. 2010) (*Mooring I*). Two years later, Ms. Knight filed a new suit in Oklahoma state court on behalf of herself, Phoenix, and another of her companies, Mini Malls of America, also an Oklahoma corporation. The defendants were Capital and Financial and individuals associated with them, including Financial's Chief Executive Officer, John Jacquemin, and unnamed "Counsels and Agents of Defendants." R. at 15. Capital, Financial, and Mr. Jacquemin removed the litigation to federal district court.

The removing defendants moved to dismiss with prejudice. In addition to filing a response, Ms. Knight filed a first amended complaint that named as additional defendants the law firm and individual lawyers who represented Capital and Financial in *Mooring I* (the Counsel Defendants). Capital, Financial, and Mr. Jacquemin then moved to dismiss the first amended complaint with prejudice. Citing claim preclusion, the statute of limitations, and Fed. R. Civ. P. 12(b)(6), the court granted the motion the next day. In the same order, the court sua sponte dismissed the claims against the other defendants.

The day after the district court filed its judgment dismissing the action with prejudice, Ms. Knight filed a motion to remand the case to state court, which the district court denied as moot. Ms. Knight then filed a Fed. R. Civ. P. 59 motion to vacate, alter, or amend the dismissal order, which the district court also denied. Shortly thereafter, Ms. Knight sent an e-mail message seeking the district judge's recusal. The court ordered the e-mail to be filed and denied the request for recusal.

- 3 -

Ms. Knight has appealed.[1]  We affirm.  The removal of the case to federal court was proper.  Some of Ms. Knight's claims were untimely and the others fail to state a claim or are barred by issue preclusion (collateral estoppel).  And her request for recusal was untimely.

## II.  Analysis

### A.     Issues Concerning Removal

#### 1.       District Court's Jurisdiction

We first consider Ms. Knight's challenge to the district court's jurisdiction, reviewing the issue de novo, *see Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1234 (10th Cir. 2006).  The district court may exercise removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  In removing the action, defendants primarily relied upon diversity jurisdiction, but they also cited federal-question jurisdiction.  We need not consider the arguments regarding diversity jurisdiction because Ms. Knight's assertion of federal-law claims under RICO supports federal-question jurisdiction.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  On appeal Ms. Knight appears to argue that she did not

---

[1]     Ms. Knight filed notices of appeal naming as appellants herself and her two corporations.  We have previously explained to Ms. Knight that as a nonattorney she cannot represent a corporation in federal court.  *See Mooring I*, 388 F. App'x at 823.  No counsel has filed a notice of appeal or appeared for the entities.  Consequently, Ms. Knight is the only appellant, and we do not consider any arguments regarding the entities' claims.

- 4 -

assert any federal-law claims. That argument is undermined, however, by the plain text of both her original and first amended complaints.

## 2. Counsel Defendants' Consent to Removal

The case was removed to federal court by Capital, Financial, and Mr. Jacquemin. Ms. Knight argues that removal was improper because the Counsel Defendants did not join in or consent to the removal, as required by 28 U.S.C. § 1446(b)(2)(A). But consent is required only of "defendants who have been properly joined and served," *id.*, and Ms. Knight, although asserting that she mailed a summons and complaint to the Counsel Defendants, has failed to demonstrate that they had been properly served at the time of removal.

Because the action was in Oklahoma state court before removal, we examine Oklahoma's service requirements. Oklahoma allows service by mail on individuals and entities. *See* Okla. Stat. Ann. tit. 12, § 2004(C)(2)(a). It is not clear, however, that Oklahoma would allow a pro se party to mail service. Section 2004(C)(2)(a) implies the contrary by specifying that service by mail can be accomplished "by the plaintiff's attorney, any person authorized to serve process pursuant to subparagraph a of paragraph 1 of this section [listing sheriff or deputy sheriff, licensed process server, or person specially appointed to serve process], or by the court clerk."

But even assuming that pro se plaintiffs can accomplish service by mail under Oklahoma law, the record in this case contains no evidence that service was so accomplished, much less that it was accomplished before the filing of the notice of

removal. For service by mail in Oklahoma, one must "mail[] a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee." *Id.* § 2004(C)(2)(b). "Service by mail shall be effective on the date of receipt or if refused, on the date of refusal of the summons and petition by the defendant." *Id.* § 2004(C)(2)(a). Although Ms. Knight states that she mailed a summons and complaint via registered mail, return receipt requested, to one lawyer and the law firm, her unsupported assertions are insufficient to show that she complied with the relevant service requirements. The record does not contain any return receipts showing the date of delivery or any other evidence that the documents actually were properly addressed, were deposited in the mail, and were delivered or refused. *See Chester v. Green*, 120 F.3d 1091, 1091 (10th Cir. 1997) (plaintiff failed to show service because there was "no authenticating post office stamp on any receipt showing they actually passed through the mails, nor [was] there a receipt or acknowledgment showing actual delivery of the complaint to the purported defendants"); *Colclazier & Assocs. v. Stephens*, 277 P.3d 1285, 1290 (Okla. Civ. App. 2012) ("[A]bsent any documentary evidence supporting the Law Firm's claim of attempted mailings, the district court could not have determined that service by mail had been made."). Since Ms. Knight has failed to establish that the Counsel Defendants were served before the date of removal, their consent to removal was not required.

**B.    Dismissal of Claims**

Ms. Knight challenges the district court's application of statutes of limitations, Rule 12(b)(6), and claim preclusion. For ease of analysis, we divide her claims into two categories—first, claims concerning events that occurred before the *Mooring I* litigation (Phase 1 claims), and, second, claims concerning events that occurred during the *Mooring I* proceedings (Phase 2 claims). We address each category separately. Our review is de novo. *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 705 (10th Cir. 2010) (statute of limitations); *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010) (Rule 12(b)(6)); *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007) (preclusion).

**1.    Phase 1 Claims**

The Phase 1 claims are claims based on events before *Mooring I*. They include claims that were asserted but failed in *Mooring I* and claims that could have been asserted but were not. It was proper for the district court to dismiss these claims on the ground that any applicable limitations period had expired.

The Phase 1 claims predate *Mooring I*, which began in state court in September 2005 and was removed to federal court in January 2006. The present action was not filed until July 2012. By then, any Phase 1 claims clearly were untimely. *See* Okla. Stat. Ann. tit. 12, § 95(A)(1) (five-year limitations period for actions upon written contracts, agreements, and promises); *id.* § 95(A)(2) (three-year limitations period for oral contracts and liabilities created by statute); *id.* § 95(A)(3)

- 7 -

(two-year limitations period for torts and fraud); *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (four-year limitations period for federal RICO claims); Okla. Stat. tit. 22, § 1409(E) (five-year limitations period for Oklahoma RICO claims).

### 2. Phase 2 Claims

The Phase 2 claims are those claims concerning events that occurred during *Mooring I*. They include claims that the defendants committed fraud and deceit in their filings and testimony and that their litigation conduct was tortious. It was proper for the district court to dismiss the Phase 2 claims under Rule 12(b)(6) and on the ground of preclusion (although the appropriate preclusion doctrine is issue preclusion, not claim preclusion).

### a. Claims Under Oklahoma Law

The majority of the Phase 2 claims are claims under Oklahoma law. Oklahoma, however, has afforded participants in judicial proceedings an absolute immunity against later civil suits grounded in litigation conduct. *See Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1202 (Okla. 1999) ("To the extent [plaintiff's] petition relies on perjurious testimony as the basis of her claim for damages, whether denominated perjury, fraud, deceit, or 'prima facie tort', the petition fails to state a claim."); *id.* at 1202-03 (remedies for litigation-related misconduct must be pursued in the litigated case, or by criminal or bar-discipline proceedings); *Cooper v. Parker-Hughey*, 894 P.2d 1096, 1098-1101 (Okla. 1995) (absolute immunity for witness testimony; no civil cause of action for perjury); *Kirschstein v. Haynes*,

788 P.2d 941, 945, 954 (Okla. 1990) (barring claim of defamation or intentional infliction of emotional distress against attorneys, parties, or witnesses founded on communications made in preparation for contemplated judicial proceeding); *Hartley v. Williamson*, 18 P.3d 355, 358 (Okla. Civ. App. 2000) (barring claims for negligence, deceit, and conspiracy founded on testimony at judicial proceeding); *see also Briscoe v. LaHue*, 460 U.S. 325, 330-35 (1983) (immunity of parties and witnesses); *Miller v. Glanz*, 948 F.2d 1562, 1570-71 (10th Cir. 1991) (*Briscoe* immunity extends to alleged conspiracies to commit perjury).

Further, Ms. Knight cannot bring suit under the Oklahoma RICO statute, Okla. Stat. tit. 22, §§ 1401-1419. That statute restricts standing to bring "any proceedings, civil or criminal" to "the Attorney General, any district attorney or any [specially appointed] district attorney." *Id.* § 1404(C); *see also id.* § 1409(A) ("The Attorney General, any district attorney or any [special] district attorney . . . may institute civil proceedings . . . ."); *id.* § 1419 (construction of Oklahoma RICO may follow construction of federal RICO, "provided that nothing in this section shall be deemed to provide for any private right of action or confer any civil remedy except as specifically set out in this act").

Accordingly, the Oklahoma-law Phase 2 claims failed to state a claim upon which relief can be granted.

### b. RICO Claims

The remaining Phase 2 claims are the federal RICO claims. For these claims, Ms. Knight asserts that defendants made misrepresentations to the district court, through pleadings and testimony, that increased the cost of litigating *Mooring I* and caused the district court to rule against her on her individual claims in *Mooring I*. She alleges that this activity violated the federal wire-fraud and mail-fraud statutes, and thereby constituted a pattern of racketeering in violation of RICO. *See* 18 U.S.C. § 1962(c). In light of the *Mooring I* judgment, however, she is barred from bringing these claims.

An essential element of a RICO claim is that the plaintiff was injured in her business or property by the RICO violation. *See* 18 U.S.C. § 1964(c) (creating a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962"); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003) ("[A] plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962."). But, as explained below, the damages Ms. Knight alleges from Phase 2 conduct—increased litigation costs and lost claims—were matters resolved by *Mooring I*. Further litigation of these issues is therefore precluded, and the Phase 2 RICO claims cannot proceed unless and until Ms. Knight obtains relief from the judgment in *Mooring I*. *See Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272-73 (10th Cir. 1995) (plaintiffs could not pursue fraud claims based on litigation

- 10 -

misconduct without first obtaining relief from prior judgment because their claims of damages from fraud were incompatible with facts necessarily decided in the prior action).

Because *Mooring I* is a federal judgment in a diversity action applying Oklahoma law, Oklahoma's preclusion law applies. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). In this case the appropriate preclusion doctrine is issue preclusion. We recognize that the district court relied on claim preclusion rather than issue preclusion, but we may affirm on any ground supported by the record. *See Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010). And the defendants raised both claim preclusion and issue preclusion in the district court, so Ms. Knight had an opportunity to address both doctrines. *See id.*

"Issue preclusion prevents relitigation of facts and issues actually litigated and necessarily determined in an earlier proceeding between the same parties or their privies." *Durham v. McDonald's Rests. Of Okla., Inc.*, 256 P.3d 64, 66 (Okla. 2011) (emphasis omitted).

> To establish issue preclusion, a party must prove: 1) that the party against whom it is being asserted was either a party to or a privy of a party to the prior action; 2) that the issue subject to preclusion has actually been adjudicated in the prior case; 3) that the adjudicated issue was necessary and essential to the outcome of that prior case; and 4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue.

*Id.* at 66-67 (emphasis omitted). "The principle of issue preclusion operates to bar from relitigation both correct and erroneous resolutions of jurisdictional and

- 11 -

nonjurisdictional challenges." *Okla. Dep't of Pub. Safety v. McCrady*, 176 P.3d 1194, 1199 (Okla. 2007). "An issue is actually litigated and necessarily determined if it is properly raised in the pleadings, or otherwise submitted for determination, and judgment would not have been rendered but for the determination of that issue." *Id.*

Before examining the applicability of issue preclusion to the two types of damage alleged by Ms. Knight—increased litigation costs in *Mooring I* and her loss on the merits in *Mooring I*—we address three potential grounds for not applying preclusion doctrine to her federal RICO claims. First, Ms. Knight asserts that the defendants other than Capital and Financial (namely, the individual defendants and the law firm) cannot rely on preclusion because they were not parties in *Mooring I*. Those other defendants, however, are in privity with Capital and Financial. *See Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) ("The law firm defendants appear by virtue of their activities as representatives of [other defendants], also creating privity."); *Fox v. Maulding*, 112 F.3d 453, 459-60 (10th Cir. 1997) (officers and directors of bank were privies of bank for purposes of RICO claims because allegations related to actions taken in their capacities as officers and directors). "In light of the circumstances of this case, including the alleged relationship between the defendants in this and the previous trial, we think that Oklahoma would not prohibit the defensive assertion of collateral estoppel on the sole grounds that the defendants here were not parties to the previous action." *Robinson*, 56 F.3d at 1272 n.3.

Second, Ms. Knight complains that the defendants did not submit the entire record from *Mooring I* in support of their preclusion argument. The district court, however, could take judicial notice of its own records to evaluate preclusion. *See Gee*, 627 F.3d at 1194.

Third, we consider the possibility that issue preclusion does not apply here because Ms. Knight's complaint enables her to set aside the judgment in *Mooring I*, eliminating any preclusive effect that it may have. We reject the possibility for the following reasons.

To begin with, the remedies under RICO do not include setting aside a prior judgment or undermining its preclusive effect by a collateral attack. The circuits to consider the matter have rejected such relief. *See Hendrick v. H.E. Avent*, 891 F.2d 583, 585-87 (5th Cir. 1990) (collateral attack on judgment through RICO claim is barred by res judicata); *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012, 1016 (7th Cir. 1988) ("RICO is many things, but it is not an exception to res judicata."); *see also Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 747, 749-50 (5th Cir. 2008) (RICO suit was impermissible collateral attack on foreign arbitration award); *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731-32 (8th Cir. 2004) (RICO claims by nonparty to bankruptcy action were impermissible collateral attack on bankruptcy judgment that was good against the world).

Moreover, Ms. Knight's complaint does not support a direct attack on the *Mooring I* judgment under either Fed. R. Civ. P. 60(b)(3) (court may relieve a party of a judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party") or an action based on fraud on the court, *see* Fed. R. Civ. P. 60(d)(3) (Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court"). If construed as a motion under Rule 60(b)(3) (which would need to have been filed in *Mooring I* in any event), the motion was untimely under Fed. R. Civ. P. 60(c)(1) (one-year time limit for Rule 60(b)(3) motions). And the complaint's allegations regarding defendants' litigation misconduct fail to rise to the level of a claim for fraud on the court. *See Plotner*, 224 F.3d at 1170 (fraud on the court "refers to misrepresentation direct[ly] affecting the judicial process, not simply the non-disclosure to one party of facts known by another"); *Weese v. Schukman*, 98 F.3d 542, 553 (10th Cir. 1996) (allegations of "material misrepresentations or omitted information needed to make . . . answers fully truthful . . . simply do not rise to the level necessary to constitute 'fraud on the court'"); *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc) ("Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. . . . It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function— thus where the impartial functions of the court have been directly corrupted.").

- 14 -

We now examine the elements of issue preclusion with respect to Ms. Knight's two categories of alleged damages.

### i.      Increased Costs in *Mooring I*

As one item of damages, Ms. Knight asserts that defendants' fraud unnecessarily increased the costs of litigating *Mooring I*.  But the parties' conduct, and its relation to the fees and costs incurred, were issues in *Mooring I*.

After the trial, both sides moved for awards of attorney fees.  Phoenix requested an award of $224,392.17 against Capital and Financial, and Capital and Financial requested an award of $306,644.34 against Ms. Knight.  *See Mooring I*, 388 F. App'x at 818.  The district court granted the motions in part, awarding Phoenix $49,000 and awarding Capital and Financial $88,000. *Id.*  As part of its determination, "the district court declined to find that Capital and Financial acted in bad faith [and] assessed blame for the protracted litigation on all parties, not just Capital and Financial."  *Id.* at 828; *see also id.* at 826 (district court "observed that both parties' fees were unreasonable [and] that both parties contributed to the excessive fees").  Phoenix appealed the amount of the fees awarded to it, and Ms. Knight appealed the award in favor of Capital and Financial against her.  *See id.* at 818, 825-28.

On appeal Ms. Knight argued "that Capital and Financial do not deserve an award of fees because of their bad faith and misconduct" and that the district court "did not properly weigh that Capital and Financial created the situation that led to

- 15 -

increased fees." *Id.* at 827. This court held, however, that the district court "thoughtfully reviewed the case, taking into account" the proper factors in determining a fee award. *Id.* Further, this court held that the district court did not abuse its discretion in declining to find that Capital and Financial acted in bad faith and in assessing blame for increased costs on all the parties. *See id.* at 828.

All the elements of issue preclusion are met as to Ms. Knight's claim of RICO damages from the increased costs of litigating *Mooring I*. Ms. Knight, individually, was a party in *Mooring I*. As discussed above, the district court actually adjudicated the parties' responsibility for the fees and costs incurred in litigating the action. The district court considered Ms. Knight's allegations of misconduct, but it specifically declined to find that Capital and Financial acted in bad faith. If they did not act in bad faith, they could not have acted fraudulently; therefore, Ms. Knight's current claim of damage would require her to establish facts that are incompatible with *Mooring I*. Further, the adjudication was necessary and essential to the court's determination of the parties' motions for fees and costs.

As to the final element of issue preclusion, Ms. Knight argues that because of defendants' fraudulent conduct, she did not have a full and fair opportunity to litigate her claims in *Mooring I*. We disagree. In large part, "full and fair opportunity" focuses on procedural due process and fundamental fairness. The Oklahoma Supreme Court has stated:

> Issue preclusion . . . is an equitable doctrine. Where the parties'
> alignment and the raised legal and factual issues warrant and fairness to

- 16 -

the parties is not compromised by the process, its application is appropriate. It is indeed the proceeding's substance and the degree of due process inherent in it, rather than its form, which is the court's bellwether for the doctrine's application.

*Cities Serv. Co. v. Gulf Oil Corp.*, 980 P.2d 116, 126 (Okla. 1999) (internal quotation marks omitted). And in a case arising from Oklahoma, this court wrote, "The requirement that the party against whom the prior judgment is asserted had a full and fair opportunity to be heard centers on the fundamental fairness of preventing the party from relitigating an issue he has lost in a prior proceeding." *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990).

The Oklahoma Supreme Court has identified several relevant factors in evaluating this element:

> (1) whether the [party] had ample incentive to litigate the issue fully in the earlier proceeding; (2) whether the judgment or order for which preclusive effect is sought is itself inconsistent with one or more earlier judgments in the [party's] favor; . . . (3) whether the second action affords the [party] procedural opportunities unavailable in the first that could readily produce a different result; . . . [(4)] whether the current litigation's legal demands are closely aligned in time and subject matter to those in the earlier proceedings; [(5)] whether the present litigation was clearly foreseeable . . . at the time of the earlier proceedings; and [(6)] whether in the first proceeding the [party] had sufficient opportunity to be heard on the issue.

*Cities Serv. Co.*, 980 P.2d at 125 (footnotes omitted); *see also Sil-Flo*, 917 F.2d at 1521 ("Often, the inquiry will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or

- 17 -

relationship of the parties."); *Restatement (2d) of Judgments* §§ 28, 29 (listing factors that may justify not applying preclusion).[2]

Nothing in this appeal indicates that applying issue preclusion would be fundamentally unfair to Ms. Knight. She had the opportunity to be heard in *Mooring I*, including the opportunity to appeal to this court, and she had ample incentive to litigate the issue fully, given that Capital and Financial sought an award exceeding $300,000. We recognize that preclusion may not be appropriate when "the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Restatement (2d) of Judgments* § 28(5)(c). But Ms. Knight does not identify any arguments she would have made regarding fees and costs in *Mooring I* had it not been for defendants' alleged fraud, does not offer any specific explanation of how defendants' litigation misconduct affected her ability to litigate the issue of fees and costs in *Mooring I*, and does not allege that there is evidence of litigation misconduct that was unavailable while *Mooring I* was pending.

---

[2] The Oklahoma Supreme Court has relied on the *Restatement (Second) of Judgments* as authority. *See, e.g.*, *Johnson v. State ex rel. Dep't of Pub. Safety*, 2 P.3d 334, 337 (Okla. 2000); *Kirkpatrick v. Chrysler Corp.*, 920 P.2d 122, 132 (Okla. 1996).

### ii. Lost Claims in *Mooring I*

As another item of damages, Ms. Knight asserts that the defendants' conduct caused the district court to rule against her on her individual claims in *Mooring I*. This court has recognized that a cause of action is a form of property for purposes of RICO. *See Deck*, 349 F.3d at 1259. But we decline to recognize a conclusively meritless claim as property under RICO, and Ms. Knight's individual claims in *Mooring I* were declared to be meritless. *See* 388 F. App'x at 818, 823-25. As with her litigation-costs argument, unless and until the *Mooring I* judgment is vacated, issue preclusion establishes conclusively that her claims in *Mooring I* lacked merit.

Each element of issue preclusion is satisfied with regard to Ms. Knight's individual claims. She presented her individual claims to the court, and judgment was rendered against her. *Id.* at 818, 827. The adjudication of her claims was necessary and essential to the outcome of *Mooring I*. And Ms. Knight alleges no facts indicating that she lacked a full and fair opportunity to litigate her individual claims in *Mooring I*. Rather than offering any specific explanation of how defendants' litigation misconduct prevented her from adequately presenting her individual claims, she makes only conclusory allegations that defendants' misconduct caused the court to rule against her unjustly.

As long as the *Mooring I* judgment stands, Ms. Knight cannot plead an essential element of her Phase 2 RICO claim—namely, injury to a colorable cause of action. Dismissal of the claim is required under the doctrine of issue preclusion.

### 3. Remaining Arguments

Ms. Knight asserts that the dismissal decision was premature because the district court granted defendants' motion to dismiss before her deadline to file a motion to remand to state court and before her response period expired. She also complains that the district court granted judgment for some defendants sua sponte, it did not give her the opportunity to amend, and it dismissed her claims with prejudice. We see no reversible error. First, Ms. Knight was not prejudiced by the court's taking action before she could move to remand, because such a motion would have failed. Second, although we disfavor (1) sua sponte dismissals and (2) dismissals before the losing party has an opportunity to respond, this court has held that such a "dismissal under Rule 12(b)(6) is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [her] an opportunity to amend [her] complaint would be futile." *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (citation and internal quotation marks omitted). Similarly, even though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment "where it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend." *Gee*, 627 F.3d at 1195 (internal quotation marks omitted). And finally, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile," *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.

2006); *see also Gee*, 627 F.3d at 1181, 1195 (affirming dismissal with prejudice of claims barred by statute of limitations and claim preclusion). For the reasons discussed, it is patently obvious that Ms. Knight cannot proceed with her claims, and any further opportunity to amend would be futile because her claims would still be barred. Therefore, the district court did not err in dismissing claims sua sponte, in dismissing without affording Ms. Knight an opportunity to amend, or in dismissing the claims with prejudice.

Finally, Ms. Knight asserts that the district judge should have recused himself. But she did not request recusal until after the district court dismissed her action and denied her Rule 59 motion. That was too late. "We have held that under either 28 U.S.C. § 144 or § 455, the party seeking recusal must act in a timely fashion to request recusal." *United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir. 1995).

## C.    Rule 59 Motion

We review the denial of a Rule 59 motion for abuse of discretion. *See Price v. Wolford*, 608 F.3d 698, 706 (10th Cir. 2010). Because we have found no reversible error, we also find no abuse of discretion in denying the Rule 59 motion.

### III.  Conclusion

The judgment of the district court is affirmed.